UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CHRISTOPHER DORCH,

        Plaintiff,               Case No. 2:11-cv-150

v.                                   Honorable Robert Holmes Bell

PETER MUNOZ et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Claims I, IV, V, VI, VII, IX (federal claim only) of the complaint, which also will result in the dismissal of Defendants Boynton, Winnicki and Munoz. The Court will serve claims II, III, VIII, IX (state claim only) and X against Defendants Bernhardt, McDonald, Mumma and Woods.

## Factual Allegations

Plaintiff is incarcerated in the Kinross Correctional Facility, but the events giving rise to his complaint took place at the Chippewa Correctional Facility. In his *pro se* complaint, Plaintiff sues Michigan State Police Director Peter Munoz and the following employees of the Chippewa Correctional Facility: Resident Unit Officer (unknown) Bernhardt, Warden John Boynton, Inspector Ian McDonald, Assistant Resident Unit Supervisor Carl Mumma, Library Manager Amanda Winnicki and Assistant Library Manager K. Woods.

Plaintiff alleges that Defendant Bernhardt conducted a search of Plaintiff's cell on the evening of May 25, 2008. Plaintiff claims that Bernhardt spent two-and-a-half hours reading his personal and legal property and accessing information stored in his typewriter. At the end of the search, Bernhardt removed a large quantity of Plaintiff's legal property without issuing a contraband removal record. Plaintiff further claims that Bernhardt left his cell in complete disarray; scattered his property all over the cell and mixed his property with his cell mate's property. Plaintiff alleges that after the search, Bernhardt "began a pattern of behavior that was intended to be menacing and antagonistic." (Compl., ¶ 6, Page ID#5.) For example, Bernhardt would spin around in his chair when Plaintiff entered the room and stare him down.

On May 28, 2008, Plaintiff learned that Bernhardt had issued a false misconduct report against him for forgery, possession of forged documents, bribery of an employee and possession of contraband. At the misconduct review, Plaintiff complained that he had not received a receipt or record of the property removed from his cell and asked for the state police to be contacted with regard to the theft of his property. Plaintiff finally received a contraband removal record on May 29, 2008, but it failed to itemize the items taken from Plaintiff's cell. Plaintiff filed

a Step I grievance against Bernhardt on June 1, 2008, complaining about the search and his failure to provide an itemized contraband removal record. The Step I grievance was rejected by the grievance coordinator on June 2. Plaintiff appealed the grievance through Step III of the administrative grievance process.

A hearing on the major misconduct charges was conducted on June 17, 2008. Plaintiff was found not guilty of the forgery and possession of forged documents charges, but guilty of the bribery and contraband charges. Plaintiff filed a request for rehearing, which was denied. Plaintiff subsequently filed a petition for judicial review in the Ingham County Circuit Court. On March 29, 2010, the court issued an order vacating the bribery and contraband convictions because they were not supported by competent, material and substantial evidence.

Plaintiff also filed a mandamus action in the Ingham County Circuit Court on August 18, 2008, against Defendants Munoz, Boynton, McDonald for dilatory performance of their duties and for recovery of his property. That case ultimately was resolved in favor of Defendants.

Plaintiff asserts the following ten legal claims arising from the alleged theft of his legal documents: (I) Eighth Amendment (Bernhardt); (II) Substantive Due Process (Bernhardt); (III) First Amendment Retaliation (Mumma); (IV) Supervisory Liability (Mumma and/or Boynton); (V) Conversion (McDonald and/or Boynton); (VI) Gross Negligence (Munoz); (VII) Class of One Discrimination (Winnicki and Woods); (VIII) First Amendment Retaliation (Woods); (IX) Spoliation (McDonald); and (X) Access to the Courts (McDonald). Additional facts regarding Plaintiff's individual claims will be provided below.

Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

## Standard of Review

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## Discussion

I. **Eighth Amendment (Defendant Bernhardt)**

Plaintiff claims that Defendant Bernhardt violated his Eighth Amendment right against cruel and unusual punishment when he took Plaintiff's property with the intent to menace and antagonize him. Plaintiff contends that Bernhardt "intentionally exposed Plaintiff to a known, unreasonable, and foreseeable risk of mental and/or emotional harm, whose natural consequence was to seriously frustrate Plaintiff's efforts to adjust and survive in the already stressful environment of URF." (Compl., ¶ 31, Page ID#9.) As a result of Bernhardt's conduct, Plaintiff alleges that he suffered emotional distress, anxiety and mental anguish, and in one instance, experienced a hives outbreak.

As an initial matter, the PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007). There is no statutory definition of "physical injury" as used in § 1997e(e). However, the courts have indicated that while the requisite physical injury need not be significant, it must be more than *de minimis*. *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010.). The only physical injury alleged by Plaintiff, a hives outbreak, arguably is *de minimis*. *See Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002) (finding that two small bruises and minor cuts were *de minimis* injury); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9,

2000) (finding that prisoner's "whirling sensation" in head after missing a meal was *de minimis* injury). Even if Plaintiff could demonstrate that he suffered a physical injury that was more than *de minimis*, he fails to state an Eighth Amendment claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment only is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The removal of property from Plaintiff's cell, even if unauthorized, clearly does not constitute the type of deprivation protected by the Eighth Amendment. Plaintiff, therefore, fails to state an Eighth Amendment claim against Defendant Bernhardt.

II. **Substantive Due Process (Defendant Bernhardt)**

In Claim II, Plaintiff contends that Defendant Bernhardt violated his substantive due process rights by stealing his property and then covering up his illegal conduct by bringing four false misconduct charges against Plaintiff. Plaintiff was found not guilty of two of the charges and the remaining two convictions later were vacated by the state circuit court. Plaintiff contends that

Bernhardt's actions were motivated by his personal animus against Plaintiff for educating himself in matters of common law and the Uniform Commercial Code.

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state a Substantive Due Process claim against Defendant Bernhardt.

### III. Retaliation for First Amendment Conduct (Defendant Mumma)

Plaintiff claims that Defendant Mumma retaliated against him for filing a grievance against Defendant Bernhardt by circulating a copy of the Step I grievance to unit officers. Plaintiff contends that Mumma circulated his grievance against Bernhardt in order to retaliate and to encourage other prison employees to retaliate against Plaintiff for filing the grievance. Plaintiff alleges that as a result of Mumma's conduct, he "was subjected to further abused [sic] and discriminations from prison staff . . ." (Compl. ¶ 55, Page ID#12.) Plaintiff filed a grievance against Mumma for his retaliatory conduct.

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Bernhardt.

### IV. Supervisory Liability (Defendants Mumma and/or Boynton)

Plaintiff contends that Defendants Boynton and Mumma failed to take action to remedy Defendant Bernhardt's unconstitutional conduct. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates

are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Boynton engaged in any active unconstitutional behavior. Likewise, Plaintiff does not allege that Defendant Mumma actively engaged in the theft of his property. Thus, while the Court is serving Plaintiff's retaliation claim (Claim III) against Defendant Mumma, Plaintiff cannot maintain an action against Mumma under a theory of supervisory liability concerning the alleged theft of Plaintiff's property by Defendant Bernhardt. Accordingly, Claim IV will be dismissed against Defendants Boynton and Mumma.

V. **Conversion (Defendants McDonald and/or Boynton)**

Plaintiff contends that Defendant Boynton, as Warden of URF, failed to take action to prevent the destruction of his property. Plaintiff alleges that Defendant McDonald, as Inspector of URF, was responsible for the final disposition of Plaintiff's property. He claims that "Defendants Boynton and McDonald possessed supervisory authority to address, investigate, and correct the misconduct of RUO Bernhardt's theft." (Compl., ¶ 74, Page ID#16.) Plaintiff further alleges that Defendants Boynton and McDonald "aided RUO Bernhardt in concealing said property by turning a blind eye to RUO Berhnhardt's misconduct and allowing him to proceed." (Compl, ¶ 76, Page ID #16.) According to Plaintiff, Defendants Boynton and McDonald allowed Bernhardt to succeed with the unlawful conversion of Plaintiff's property, resulting in a pecuniary loss of $883.95.

Plaintiff brings a state law tort claim for conversion of his property. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent Plaintiff's allegations suggest that he was deprived of property in violation of his due process rights, Plaintiff fails to state a claim. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a due process claim against Defendants McDonald and Boynton.

Plaintiff, therefore, fails to state a federal claim against Defendants Boynton and McDonald in Count V. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claim for conversion, the Court declines to exercise jurisdiction. The doctrine of supplemental jurisdiction grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). Because there is no surviving federal claim associated with Claim V, Plaintiff's claim of conversion will be dismissed without prejudice.

VI.     **Gross Negligence (Defendant Munoz)**

On June 25, 2008, Plaintiff sent his "Verified Actual and Constructive Notice" by certified mail to Defendant Munoz recounting the events surrounding the taking of his property and the conduct of MDOC employees in covering up Bernhardt's unlawful conduct. In a letter dated August 27, 2008, Plaintiff was informed that all complaints of misconduct against MDOC employees were referred to the MDOC's Internal Affairs Section for review, and their review would determine whether state police involvement in a criminal investigation was warranted. Plaintiff never was contacted by the Michigan State Police regarding the theft of his property. Plaintiff contends that as Director of the Michigan State Police, Munoz owes a duty to the public to investigate crimes. Plaintiff further asserts that Munoz' failure to perform his duty to enforce the law violated MICH. COMP. LAWS § 752.11 and constituted gross negligence as defined by MICH. COMP. LAWS § 691.1407(7).

Plaintiff essentially is alleging that Defendant Munoz violated his constitutional rights because he failed to pursue a criminal investigation and prosecution of Defendant Bernhardt. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendant Bernhardt because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). Consequently, Munoz' failure to conduct an investigation or to prosecute Bernhardt fails to state a claim for violation of Plaintiff's federal rights.

Plaintiff also asserts violations of Michigan statutory law and gross negligence. As

previously discussed, Section 1983 does not provide redress for a violation of a state law. *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Because Plaintiff does not have a surviving federal claim against Munoz or any surviving federal claim related to the alleged failure to conduct a criminal investigation and prosecution of Defendant Bernhardt for the alleged theft of his property, the Court declines to extend supplemental jurisdiction over Plaintiff's state-law claims against Defendant Munoz.

VII. **Class of One Discrimination (Defendants Winnicki and Woods)**

In pursuing his state civil action related to the alleged theft of his property, Plaintiff submitted a request on September 19, 2008, for forty sheets of carbon paper to Defendant Woods. Defendants Winnicki and Woods informed Plaintiff that he would be given only six sheets of carbon paper, and when he was finished using them, he could exchange them for six new sheets. In the past, Plantiff had received fifteen sheets of carbon paper at a time without the requirement that he return the used sheets in order to get additional sheets. Plaintiff cites examples of one prisoner who was given twenty sheets of carbon paper and another prisoner who was given forty sheets of carbon paper without being required to return the used carbon paper. Plaintiff claims that Defendants Winnicki and Woods treated him differently than other similarly situated prisoners in violation of his equal protection rights.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered

a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). Moreover, prisoners do not have a fundamental right to an unlimited amount of carbon paper.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

While Plaintiff contends that other prisoners were given more sheets of carbon paper and without being required to return the used carbon paper, Plaintiff does not allege that he was similarly situated to those prisoners. For example, Plaintiff does not allege that the prisoners were indigent or that they had used the same amount of carbon paper in the past as Plaintiff. Moreover, the Supreme Court recently has recognized that rational basis scrutiny is not properly applied to certain discretionary decisions, such as employment decisions:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the

arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). While the Supreme Court's holding in *Engquist* was limited to the employment context, the Court's broad language is equally relevant to a variety of prison decisions, including this one. The amount of carbon paper and other writing supplies to give a prisoner at one time is the type of discretionary decisions discussed in *Engquist* that typically are "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* Prison officials clearly should be given broad discretion in determining the method for distributing carbon paper and other legal writing materials to prisons to preserve resources and prevent abuse. Plaintiff, therefore, fails to state a an equal protection claim.

Furthermore, to the extent Plaintif's allegation suggest that Defendants Winnicki and Woods' conduct violated his First Amendment right of access to the courts, Plaintiff fails to state a claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program

or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff does not allege that he suffered an actual injury to his civil litigation as a result of Defendant Winniki and Woods' alleged conduct. The restriction only affected the amount of carbon paper that Plaintiff could possess at one time. According to Plaintiff, each carbon sheet could be used three times. Thus, each batch of six sheets of carbon paper could produce eighteen copies. Moreover, Plaintiff could exchange his used sheets of carbon paper for new sheets as often as he wished. Plaintiff does not allege that the restriction had any impact whatsoever on his civil litigation. Any inconvenience that Plaintiff suffered as a result of the restriction did not constitute "actual injury." Therefore, Plaintiff fails to state an equal protection or access-to-the-courts claim against Defendants Winnicki and Woods.

### VIII. **First Amendment Retaliation (Defendant Woods)**

Plaintiff claims that immediately after he filed a grievance against Defendants Winnicki and Woods concerning the carbon paper, Defendant Woods' became verbally abrupt and dismissive toward him. Plaintiff's requests for law library scheduling sometimes went unanswered or were denied. According to Plaintiff, he never had any problem scheduling library time before he filed his grievance. Plaintiff claims that his requested scheduling for law library time was again denied after Plaintiff filed an additional grievance against Woods for her retaliatory conduct.

At this stage of the proceedings, Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Woods.

### IX. **Spoliation (Defendant McDonald)**
### X. **Access to the Courts (Defendant McDonald)**

Plaintiff claims that he wrote to Defendant McDonald on June 18, 2008, requesting an itemized list of the property removed from his cell by Defendant Bernhardt. Plaintiff did not receive a written response to his request, but spoke to McDonald directly on August 20, 2008. McDonald told Plaintiff that it was Officer Bernhardt's responsibility to make an itemized list of seized property. McDonald further informed Plaintiff that he would check to ensure that the property had not been destroyed and would hold the property until Plaintiff exhausted his administrative remedies. On September 26, 2008, Plaintiff sent McDonald official notice that he filed a civil action in the state court to recover his property. Plaintiff also notified McDonald of the principle of spoliation should Plaintiff's property be destroyed, altered or concealed. In a response dated September 29, 2008, McDonald reiterated that Plaintiff's property would not be disposed of until Plaintiff exhausted his administrative remedies.

Following a status hearing in Plaintiff's civil case on April 12, 2010, the court ordered Defendants to disclose what property they had to Plaintiff and the court. Plaintiff subsequently received a letter from defense counsel informing him that, according to the litigation coordinator at URF, Plaintiff's property was destroyed on September 25, 2008. Plaintiff contends that his property could not have been destroyed on that date because another prisoner observed Bernhardt looking through a bag of paperwork tagged with Plaintiff's name on October 13, 2008. He also cites McDonald's letter dated September 29. Plaintiff alleges that McDonald intentionally concealed and destroyed his property to cover up Bernhardt's wrongdoing. Plaintiff further contends that McDonald owed him a general duty of care not to destroy his property until after he exhausted his administrative and state court remedies.

The trial court granted the defendants' motion for summary judgment in Plaintiff's state civil action on July 13, 2010. According to Plaintiff, the trial court's central reason for granting Defendants' motion for summary judgment was the fact that the property had been destroyed. A

final order dismissing Plaintiff's action was entered on October 11, 2010. Plaintiff contends that as a direct result of Defendant McDonald's spoliation Plaintiff was obstructed in presenting his case. He claims that he was denied access to the court to recover his property or compel a record of what was taken to be produced. As a result of McDonald's conduct, Plaintiff allegedly suffered a loss of $560.32 in litigation related fees.

At this stage of the proceedings, the Court finds that Plaintiff's allegations that Defendant McDonald intentionally destroyed his property to thwart his civil litigation are sufficient to state a claim for denial of access to the courts in Count X. With regard to Count IX, Plaintiff cannot maintain a state-law claim for spoliation under Section 1983. *See Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Consequently, Claim IX fails to raise a federal claim against Defendant McDonald. However, the Court will retain supplemental jurisdiction of Plaintiff's state-law claim for spoliation.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Claims I, IV, V, VI, VII, IX (federal claim only) of the complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The dismissal of those claims also will result in the dismissal of Defendants Boynton, Winnicki and Munoz. The Court will serve claims II, III, VIII, IX (state claim only) and X against Defendants Bernhardt, McDonald, Mumma and Woods.

An Order consistent with this Opinion will be entered.


Dated: May 20, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE