UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER DORCH,

                Plaintiff,                  Case No. 2:11-cv-150

v.                                    Honorable Robert Holmes Bell

PETER MUNOZ et al.,

                Defendants.

_____/

## OPINION

Plaintiff Christopher Dorch is an inmate currently confined at the Kinross Correctional Facility (KCF), but the events giving rise to his complaint took place at the Chippewa Correctional Facility (URF). In his *pro se* complaint, Plaintiff sues Michigan State Police Director Peter Munoz and the following employees of the Chippewa Correctional Facility: Resident Unit Officer Unknown Bernhardt, Warden John Boynton, Inspector Ian McDonald, Assistant Resident Unit Supervisor Carl Mumma, Library Manager Amanda Winnicki and Assistant Library Manager K. Woods.

Plaintiff's complaint alleges that Defendant Bernhardt conducted a search of Plaintiff's cell on the evening of May 25, 2008. Plaintiff claims that Bernhardt spent two-and-a-half hours reading his personal and legal property and accessing information stored in his typewriter. At the end of the search, Bernhardt removed a large quantity of Plaintiff's legal property without issuing a contraband removal record. Plaintiff further claims that Bernhardt left his cell in complete disarray; scattered his property all over the cell and mixed his property with his cell mate's property. Plaintiff

alleges that after the search, Bernhardt "began a pattern of behavior that was intended to be menacing and antagonistic." (Compl., ¶ 6, Page ID#5.) For example, Bernhardt would spin around in his chair when Plaintiff entered the room and stare him down.

On May 28, 2008, Plaintiff learned that Bernhardt had issued a false misconduct report against him for forgery, possession of forged documents, bribery of an employee and possession of contraband. At the misconduct review, Plaintiff complained that he had not received a receipt or record of the property removed from his cell and asked for the state police to be contacted with regard to the theft of his property. Plaintiff finally received a contraband removal record on May 29, 2008, but it failed to itemize the items taken from Plaintiff's cell. Plaintiff filed a Step I grievance against Bernhardt on June 1, 2008, complaining about the search and his failure to provide an itemized contraband removal record. The Step I grievance was rejected by the grievance coordinator on June 2, 2008. Plaintiff appealed the grievance through Step III of the administrative grievance process.

A hearing on the major misconduct charges was conducted on June 17, 2008. Plaintiff was found not guilty of the forgery and possession of forged documents charges, but guilty of the bribery and contraband charges. Plaintiff filed a request for rehearing, which was denied. Plaintiff subsequently filed a petition for judicial review in the Ingham County Circuit Court. On March 29, 2010, the court issued an order vacating the bribery and contraband convictions because they were not supported by competent, material and substantial evidence.

Plaintiff also filed a mandamus action in the Ingham County Circuit Court on August 18, 2008, against Defendants Munoz, Boynton and McDonald for dilatory performance of their duties and for recovery of his property. That case ultimately was resolved in favor of Defendants.

Plaintiff's complaint asserts the following ten legal claims arising from the alleged theft of his legal documents: (I) Eighth Amendment (Bernhardt); (II) Substantive Due Process (Bernhardt); (III) First Amendment Retaliation (Mumma); (IV) Supervisory Liability (Mumma and/or Boynton); (V) Conversion (McDonald and/or Boynton); (VI) Gross Negligence (Munoz); (VII) Class of One Discrimination (Winnicki and Woods); (VIII) First Amendment Retaliation (Woods); (IX) Spoliation (McDonald); and (X) Access to the Courts (McDonald). Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

On May 20, 2011, the court dismissed with prejudice Plaintiff's Claims I, IV, V, VI, VII, and IX (federal claim only), as well as Defendants Boynton, Winnicki and Munoz. The court ordered service of Plaintiff's complaint with regard to claims II, III, VIII, IX (state claim only) and X on Defendants Bernhardt, McDonald, Mumma and Woods. (Docket #7 and #8.) Presently before the Court are the Motions for Summary Judgment, filed by Defendants Bernhardt, McDonald, Woods, and Mumma (docket #25 and #43) pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses (docket #50, #57, and #58) and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to summary judgment on Plaintiff's substantive due process claim against Defendant Bernhardt. In Plaintiff's complaint, he contends that Defendant Bernhardt violated his substantive due process rights by stealing his property and then covering up his illegal conduct by bringing four false misconduct charges against Plaintiff. Plaintiff alleges that on May 25, 2008, Defendant Bernhardt conducted a cell search, during which he spent two and a half hours reading Plaintiff's property and accessing information from his typewriter. Plaintiff states that Defendant Bernhardt took a large quantity of his paperwork without issuing a contraband removal record and left Plaintiff's cell in disarray. Plaintiff asserts that Defendant Bernhardt began a pattern of behavior that was intended to be menacing and antagonistic, such as staring Plaintiff down each time he entered the room. On May 28, 2008, Defendant Bernhardt issued a false misconduct on Plaintiff for forgery, possession of forged documents, bribery of an employee, and possession of contraband. Following an administrative hearing, Plaintiff was found guilty of the bribery and contraband charges. However, Plaintiff sought judicial review and these charges were later vacated by the Ingham County Circuit Court. Plaintiff contends that Bernhardt's actions were motivated by

4

his personal animus against Plaintiff for educating himself in matters of common law and the Uniform Commercial Code (UCC) and for associating with another prisoner who also educated himself in the matters of common law and UCC law.  Finally, Plaintiff states that the confiscated documents were drafted in execution of his First Amendment rights.

In order to state a viable substantive due process claim premised upon the arbitrary use of governmental power, Plaintiff must show at a minimum that intentional governmental conduct which "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *See e.g. United States v. Salerno*, 481 U.S. 739, 746 (1987); *Nobles v. Brown*, 985 F.2d 235, 236-237 (6th Cir. 1992).  In the Sixth Circuit, these standards require that Plaintiff establish that he has been deprived of a fundamental right and that the defendants were more than simply negligent.  *See generally*, *Nobles*, *supra*; *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992), *cert. denied* 510 U.S. 842 (1993); *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1350-1351 (6th Cir. 1992); *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990) (Hillman, sitting by special designation); *see also Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir. 1987).  Plaintiff must show that Defendants' conduct was egregious, shocking to the conscience, or otherwise transcending all bounds of reasonable behavior.  *Williams v. Smith*, 717 F. Supp. 523 (W.D. Mich. 1989) (Hillman, C.J.). Moreover, where there is an "explicit textual source of constitutional protection" for a plaintiff's claim, the standard applicable to that source, and "not the more generalized notion of substantive due process" should be applied.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Defendants assert that Plaintiff's substantive due process claim against Defendant Bernhardt should be construed as a retaliation claim because Plaintiff claims that Defendant Bernhardt's actions were motivated by his "personal animus" toward Plaintiff's "choice of political association" and that the confiscated documents were drafted pursuant to his First Amendment rights.

5

The court agrees.[1]  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  As noted above, Plaintiff is claiming that he engaged in constitutionally protected conduct and that this was the motivation for Defendant Bernhardt's behavior.  Therefore, because there is an "explicit textual source of constitutional protection" for Plaintiff's claim, the standard applicable to that source, the First Amendment right to be free from retaliation, and "not the more generalized notion of substantive due process" should be applied.  *Graham*, 490 U.S. at 395.

Defendants state that Defendant Bernhardt is entitled to summary judgment on Plaintiff's retaliation claim because the items confiscated by Defendant Bernhardt were materials pertaining to the UCC, which are considered contraband by the MDOC.  Defendant Bernhardt attests that he performed a random search on Plaintiff's cell on May 25, 2008.  Defendant Bernhardt states that each officer assigned to a housing unit, such as himself, is required to search three prisoner areas of control each day.  Defendant Bernhardt removed a dictionary from Plaintiff's cell because it had Security Threat Group (STG) symbols drawn in it.  As a result, Defendant Bernhardt referred Plaintiff

---

[1]Plaintiff claims that he was harassed by Defendant Bernhardt prior to the seizing of his property and that this harassment was motivated by an animus toward prisoners who studied the UCC. However, this assertion does not transform Plaintiff's claim into a substantive due process claim. Moreover, claims of abusive language and general harassment do not state a claim under the Eighth Amendment or the substantive due process clause.  *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994).

6

to the STG Coordinator, Lieutenant Brown.  (Defendants' Exhibit A, ¶ 3-5; Exhibit A-1, Memorandum to Lieutenant Brown.)

Defendant Bernhardt attests that there was nothing unusual about the timing of the search of Plaintiff's cell, as it is common to perform such searches during chow or at other times when there is a reduced number of prisoners in the unit.  Defendant Bernhardt does not recall how long he spent in Plaintiff's cell or if he examined the contents of Plaintiff's typewriter.  However, Defendant Bernhardt attests that because many prisoner typewriters have memory, it is likely that he did examine Plaintiff's typewriter.  Defendant Bernhardt states that in searching other prisoner typewriters, he has found gambling paraphernalia, STG material, and other content which violated MDOC policy.  Defendant Bernhardt removed material which he believed was violative of MDOC policy, gave Plaintiff a contraband removal slip, and issued a major misconduct for a hearing on the material.  Defendant Bernhardt states that he issued the misconduct ticket on May 27, 2008, because he needed time to finish his investigation of the large quantity of paperwork and consult various policies before proceeding.  (Defendants' Exhibit A, ¶¶ 6-14.)

Defendant Bernhardt attests that he typically attaches a contraband removal record to any misconduct report dealing with evidence confiscated from a prisoner, and that there was a copy of the contraband removal record attached to the major misconduct when it was reviewed with Plaintiff.  Defendant Bernhardt states that he is sure of this fact because the contraband removal was present with all of the other items he attached to the misconduct in the hearing packet received from the Hearing Investigator.  Defendant Bernhardt further states:

> Per the instructions of several different administrative supervisors over the years, the contraband removal record is issued as soon as possible after removal of the contraband.  It was not possible for me to go into great detail regarding the all items [sic] of paperwork removed without further study.  Even after investigating the material further,

7

> identification and classification of each piece of material confiscated
> would not be exact and I doubt that prisoner Dorch and I would have
> similar descriptions of the various items of paperwork.

(Defendants' Exhibit A, ¶ 15.)

Defendant Bernhardt attests that he believed that the material confiscated was prohibited by MDOC Policy Directive 05.03.118. Defendant Bernhardt states that based on the evidence collected from Plaintiff's cell, Plaintiff was found guilty of the bribery of an employee and possessing contraband. In the hearing report, the Hearing Officer stated that Plaintiff was given an opportunity to review the items confiscated and that all items were contraband and not to be released back into the facility. (Defendants' Exhibit A, ¶ 16.) After Defendant Bernhardt placed Plaintiff's property in the control center, he had no further contact with it. After a major misconduct hearing, any evidence is taken by the Hearing Investigator and is placed in a second evidence locker which may only be opened by a Hearing Investigator. (Defendants' Exhibit A, ¶ 17.)

Defendants also attach a copy of the misconduct ticket, copies of the documents seized from Plaintiff's cell, and the hearing report. In the hearing report, Hearing Officer McLean stated his reasons for finding as follows:

> FORGERY; POSSESSION OF FORGED DOCUMENTS: This charge is not upheld because the facts do not meet the definition of the charge.
>
> BRIBERY OF AN EMPLOYEE: Prisoner Dorch typed up a demand to Director Caruso saying that the department was liable to him for $500,000.00 but he would waive that liability if they transferred him to Ryan Road Facility on 5-25-08 at 1900 hrs. I find that this was clearly an offer to give consideration to an employee for favor which a prisoner can not do. I find that this was not the same document that he had for an earlier misconduct because this did not have all the writing the other one had and he would not be in possession of the other document even if he was appealing as it was held to be confidential so it can not be a copy or the document. The officer is

8

clear and factual in his statement and is found to be credible. The charge is upheld.

CONTRABAND: Prisoner Dorch had in his property and therefore in his possession multiple sheets of paper that referred to filing copywright [sic] and UCC liens which prisoners are not authorized to possess on 5-25-08 at 1900 hrs.  Since he was not authorized to possess the items they are contraband.  It is not a defense that he felt the contraband record was not specific as the papers were reviewed with him and he knew what they were.  All the papers seized are found to be confidential as they are contraband and can not be released back into the facility.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

(Defendants' Exhibit A-2.)

Defendants further state that the documents at issue demonstrate that Plaintiff was attempting to use the UCC to file fraudulent liens against the MDOC and various other state and federal entities.  In the major misconduct report, Defendant Bernhardt notes that a large quantity of paperwork possessed by Plaintiff asserted that he had a copyright on the use of his name and that any use without authorization required payment to him.  There was also paperwork demanding compensation from various individuals for the use of Plaintiff's name.  (Defendants' Exhibit A-2.) One of the documents seized was entitled "Notice of Claim and Reservation of Rights" and was directed to the MDOC and Director Caruso, indicated that his name was a trademark and was copyright protected and that he was owed money for the unauthorized use of his name.  Plaintiff then indicated that he was giving the MDOC an opportunity to make amends by transferring him to a facility of his choosing.  (Defendants' Exhibit A-3, letter to Caruso, p. 4.)  Plaintiff sent another letter to Annie White in the United States Social Security Commission, stating that she was "in default of the contractual copyright terms as attached to this notice."  The letter refers to the UCC and states that Plaintiff is seeking $500,000 plus treble damages for the unauthorized use of his name.  (Defendants' Exhibit A-3, letter to Ms. White, p. 1.)  Plaintiff wrote similar correspondence to John Snow, Director

9

of the United States Department of Treasury, and to Henry Paulson, Secretary of the United States Department of Treasury, each seeking a "chargeback" of $1,000,000.00. (Defendants' Exhibit A-3, letters to Mr. Snow and Mr. Paulson.) Also among the confiscated documents is a "Certification of Non-response" addressed to the United States Departments of Commerce, Health, Treasury, and Justice, as well as to the Social Security Administration, and a second "Certification of Non-response" addressed to the Michigan Department of Corrections, Patricia Caruso, Jennifer Granholm, Mike Cox, the Director of Community Health, and the Internal Revenue Service. (Defendants' Exhibit A-3.)

Defendants also offer a copy of MDOC Policy Directive 05.03.118 ¶ MM, which prohibits mail advocating, promoting, or providing instruction in the filing of a false or fraudulent UCC financing statement or lien. Defendants assert that the contents of the material confiscated from Plaintiff's cell show that he attempted to copyright his name and then deny use of his name without payment. Based on this action, Plaintiff made specific threats and demands for money to various state and federal entities and officials. Defendant Bernhardt confiscated the material because he believed that it violated MDOC policy. As noted above, a hearing officer agreed that the items confiscated were contraband.

The court notes that prison officials have a legitimate interest in preventing prisoners from filing fraudulent UCC liens. *Jones v. Caruso*, 569 F.3d 258, 275 (6th Cir. 2009). In *Jones*, the Sixth Circuit observed:

> Since 2004, there has been a nationwide increase in the number of filings by prison inmates of unsubstantiated liens and Uniform Commercial Code ("UCC") financing statements against state or federal officials involved with their incarceration. *See, e.g., United States v. Gordon,* No. CV205–158, 2005 WL 2237640, at *1–2 (S.D.Ga. Aug.25, 2005) (finding that prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate

10

government officials in the performance of their duties); *United States v. Orrego,* No. 04 CV 0008 SJ, 2004 WL 1447954, at *2–3 (E.D.N.Y. June 22, 2004) (granting government's motion for summary judgment where prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams,* No. CV–04–863–HU, 2005 WL 697041, at *2 (D.Or. Mar.24, 2005) (granting government's motion for summary judgment where prisoner submitted UCC filings against government officials, seeking payment for unauthorized use of his copyrighted name); *United States v. Martin,* 356 F.Supp.2d 621, 626–27 (W.D.Va.2005) (finding "null and void" prisoner's fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt purportedly owed to him by various government officials); *United States v. Brum,* No. CIV. A. 105CV110, 2005 WL 1606584, at *3 (E.D.Tex. July 1, 2005) (granting government's motion for summary judgment where prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald,* No. 2:05 CV 111, 2005 WL 1427718, at *2–4 (W.D.Mich. June 13, 2005) (dismissing prisoner's civil rights action under the Prison Litigation Reform Act where prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder,* No. 3:04–1044, 2005 WL 2715666, at *3–5 (M.D.Tenn. Sept.2, 2005) (declaring null and void prisoner's fraudulent UCC financing statements against government officials in the amount of $300,000,000.00).

*Id.* at 261. A review of the attachments to Defendants' motion for summary judgment make it clear that Plaintiff was attempting just such an action. Therefore, as asserted by Defendants, Plaintiff cannot show that he was engaging in protected conduct.

Moreover, Plaintiff was found guilty of possessing contraband and attempting to bribe an employee after a formal hearing was conducted. (Defendants' Exhibit A.) With regard to the causation element of a retaliation claim, "the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). The Court finds Defendants' showing in this regard is sufficient, and notes that "[a] finding of guilt based upon some evidence of a violation of prison rules

'essentially checkmates [a] retaliation claim." *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2006), *quoting Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995); *see also Ruiz v. Bouchard*, 60 Fed. Appx. 572, 574 (6th Cir. 2003) ("... to the extent that Ruiz has asserted a pure retaliation claim, Ruiz still has not stated a claim because he was convicted of the misconduct charges"); *Clemons v. Cook*, 52 Fed. Appx. 762, 763 (6th Cir. 2002); *Burton v. Rowley*, 2000 WL 1679463 (6th Cir. 2000); *Wilson v. Phipps*, 1998 WL 384560, at *1 (6th Cir. 1998), *citing Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam).

In this case, as in *Jackson*, "[t]he misconduct hearing reports written by the hearing officer show that there was some evidence to support the charges." *Id.* As set forth above, the materials seized from Plaintiff make it clear that he attempted to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment. The fact that a state court later reversed Plaintiff's misconduct conviction does not negate Defendant Bernhardt's legitimate belief that Plaintiff's materials constituted a violation of MDOC policy. Therefore, Defendant Bernhardt is entitled to summary judgment on Plaintiff's retaliation claim.

Defendants state that Defendant Woods is entitled to summary judgment on Plaintiff's retaliation claim because the alleged adverse conduct was not motivated by a desire to retaliate against Plaintiff. In his complaint, Plaintiff claims that immediately after he filed a grievance against Defendants Winnicki and Woods concerning the September 19, 2008, denial of carbon paper, Defendant Woods became verbally abrupt and dismissive toward him. Plaintiff alleges that on December 27, 2008, Defendant Woods denied Plaintiff his allotted scheduled law library time. Plaintiff filed a grievance regarding this incident, he was again denied his law library time. On January 19, 2009, Plaintiff wrote to Warden McQuiggin regarding the denial of his request for law

12

library scheduling, after which he was placed on call. According to Plaintiff, he never had any problem scheduling library time before he filed his grievance.

Defendant Woods attests that library callouts are assigned based on prisoner requests, and that when a request is received by the library, a decision is made based on prisoner job and work details, library staffing, and available seating. (Defendants' Exhibit J, ¶ 4.) Defendant Woods reviewed prison records and determined that Plaintiff received all callouts he requested. Woods notes that the library did not receive a kite from Plaintiff the week of October 28, 2008, that holiday scheduling was in effect for the week of December 29, 2008, and that Plaintiff was approved for extra law library time in December of 2008, so that Plaintiff received all his requested sessions. (Defendants' Exhibit J. ¶¶ 5-8.) Defendant Woods further attests that Plaintiff's kite for January 6, 2009, was misfiled, but that the error was discovered by Ms. Winnicki on January 13, 2009, and was discussed with Plaintiff on January 14, 2009. Plaintiff was offered make up sessions, which he refused. (Defendants' Exhibit J, ¶ 9, Attachment 1, p. 11.) The callout record for January 2009 shows that Plaintiff received callouts on the 3rd, the 5th, the 15th, the 16th, the 17th, the 21st, and the 22nd days of January, 2009. (Defendants' Exhibit J, Attachment 2.) Plaintiff was transferred on January 22, 2009. (Defendants' Exhibit J, ¶ 10.)

Defendant Woods further attests she does not recall any specific encounter with Plaintiff, but that records show that Plaintiff was terminated from his law library callout for failure to follow posted rules and repeated requests to use general library materials while on a law library callout. (Defendants' Exhibit J, ¶ 12.) A prisoner using the library who continues to argue with staff after being directed to sit down and do legal work is required to leave the library and submit a new request for library callouts. (Defendants' Exhibit J, Attachment 3.)

As asserted by Defendants, Plaintiff fails to allege any specific facts showing that Defendant Woods wished to retaliate against him. Plaintiff relies only on his belief that this was the case. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id*. at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). The court concludes that Defendant Woods is entitled to summary judgment on Plaintiff's retaliation claim.

Defendants contend that Defendant McDonald is entitled to summary judgment on Plaintiff's access to courts claim. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library,

14

litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Plaintiff claims that he wrote to Defendant McDonald on June 18, 2008, requesting an itemized list of the property removed from his cell by Defendant Bernhardt. Plaintiff did not receive a written response to his request, but spoke to McDonald directly on August 20, 2008. McDonald told Plaintiff that it was Officer Bernhardt's responsibility to make an itemized list of seized property. McDonald further informed Plaintiff that he would check to ensure that the property had not been destroyed and would hold the property until Plaintiff exhausted his administrative

15

remedies. On September 26, 2008, Plaintiff sent McDonald official notice that he filed a civil action in the state court to recover his property. Plaintiff also notified McDonald of the principle of spoliation should Plaintiff's property be destroyed, altered or concealed. In a response dated September 29, 2008, McDonald reiterated that Plaintiff's property would not be disposed of until Plaintiff exhausted his administrative remedies.

Following a status hearing in Plaintiff's civil case on April 12, 2010, the court ordered Defendants to disclose what property they had to Plaintiff and the court. Plaintiff subsequently received a letter from defense counsel informing him that, according to the litigation coordinator at URF, Plaintiff's property was destroyed on September 25, 2008. Plaintiff contends that his property could not have been destroyed on that date because another prisoner observed Bernhardt looking through a bag of paperwork tagged with Plaintiff's name on October 13, 2008. He also cites McDonald's letter dated September 29. Plaintiff alleges that McDonald intentionally concealed and destroyed his property to cover up Bernhardt's wrongdoing. Plaintiff further contends that McDonald owed him a general duty of care not to destroy his property until after he exhausted his administrative and state court remedies.

Defendants state that Plaintiff cannot show "actual injury" because a state court action for recovery of property is not the type of action cognizable in a federal access to the courts claim. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

16

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the court notes that the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).  As noted above, federal courts have held that prisoners do not have a federally protected right to the type of documents seized from Plaintiff's cell.  *Jones*, 569 F.3d at 261.  Therefore, the court concludes that Defendants are correct in asserting that Plaintiff's state court action for the return of his property is not the type of action which implicates his First Amendment right of access to the courts.

In addition, Defendants assert that Plaintiff has not shown that the destruction of property actually caused the dismissal of his action.  Plaintiff offers a copy of the order dismissing his state court action as an exhibit to his complaint.  According to the October 11, 2010, order of Judge Nicholas J. Lambros, Defendants' motion for summary disposition was granted following a hearing for the reasons stated on the record, to include lack of jurisdiction.  (Docket #1, Exhibit S.)  Plaintiff fails to offer a copy of the hearing transcript for October 11, 2010.  Therefore, it is not clear whether the destruction of the materials actually resulted in the dismissal of the action.  However, as noted above, Plaintiff's state court action was not the type protected by a First Amendment access to courts claim.  Therefore, Defendant McDonald is entitled to summary judgment on this claim.

Defendants claim that Defendant Mumma is entitled to summary judgment on Plaintiff's retaliation claim.  In his complaint, Plaintiff alleges that Defendant Mumma retaliated against him for filing a grievance against Defendant Bernhardt by circulating a copy of the Step I grievance to unit officers.  Plaintiff contends that Mumma circulated his grievance against Bernhardt

17

in order to retaliate and to encourage other prison employees to retaliate against Plaintiff for filing the grievance.  Plaintiff alleges that as a result of Mumma's conduct, he "was subjected to further abused [sic] and discriminations from prison staff . . ."  (Docket #1, p. 12.)  Plaintiff also attaches the affidavit of prisoner John McNew, who attests that he saw Defendant Mumma at the desk with a grievance that had Plaintiff's name on it on June 2, 2008, at approximately 7:30 to 8:00 a.m. Defendant Mumma handed the papers to Resident Unit Officer Osborn, who circulated them among the officers at the desk while Defendant Mumma looked on.  McNew stated that he walked by the desk several times to get a look at the papers being passed around.  Later that day, he saw Plaintiff with some paperwork.  McNew recognized the papers as the same ones being circulated to the officers by Defendant Mumma.  (Docket #1, Exhibit V.)

Plaintiff filed a grievance on Defendant Mumma for this conduct.  In support of his request for summary judgment, Defendant Mumma attaches a copy of the record for this grievance. In the step I response to this grievance, T. Swift states:

> Grievant alleges that he submitted a grievance on the evening of 6/1/08.  He was told by Prisoner McNew 384137 that on the morning of 6/2/08 at approximately 8:00, [Defendant] Mumma was circulating that grievance and showing it to unit staff.  Mr. Dorch further alleges that later that day he then saw [Defendant] Mumma discussing the grievance with Officer Bernhardt.  He believes this was done to encourage retaliation for the complaint.

> . . . Records reflect that Mr. Dorch did file a grievance regarding Officer Bernhardt on 6/1/08.  The complaint was denied Grievance Coordinator M. McLean as it dealt with a misconduct which is not a grievable issue.  Mr. McLean (responder) and Acting [Assistant Deputy Warden] Lemon (reviewer) both signed the complaint response on 6/2/08.  It would not have therefore been in the unit at 8:00 hours as indicated in the complaint.

*  *  *

18

Mr. Dorch was interviewed regarding this issue on 6/19/08 at 10:00 hours. He had no additional information to add and admits that he did not actually see the paperwork that [Defendant Mumma] was discussing with staff.

\* \* \*

It is further noted that when grievances are filed and processed, they are investigated. The investigation usually involves speaking to involved staff or those who may have information regarding the complaint. Mr. Dorch is advised that the purpose of a grievance is to find resolution, and communication is required to do so.

(Defendant Mumma's Exhibit B, p. 7.)

In addition, Christy Thurmes, who was employed as a Personnel Tech in the Bureau of Human Resources at KCF, attests that the time record for Assistant Deputy Warden Lemon for June 2, 2008, shows that he arrived for his shift at URF at noon or later. (Defendant Mumma's Exhibit C, ¶¶ 1-4.) Therefore, the record indicates that Defendant Mumma could not have circulated Plaintiff's grievance to prison officials at the unit desk on June 2, 2008, prior to 8:00 a.m. as asserted by Plaintiff. Moreover, Plaintiff fails to allege any specific facts showing that the sharing of the contents of his grievance amounted to adverse conduct sufficient to deter a person of ordinary firmness from engaging in protected conduct. The court concludes that based on the record, there is no genuine issue of material fact that Defendant Mumma retaliated against Plaintiff by showing his grievance to prison officials on June 2, 2008. Therefore, Defendant Mumma is entitled to summary judgment on this claim.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)

19

(claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).  Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2]  The State of Michigan has not consented to civil rights suits in the federal courts.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.  Therefore, any official capacity claims are properly dismissed.

Defendants also claim that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power

---

[2]     The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment.  *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

Finally, with regard to Plaintiff's state law claim of spoilation against Defendant McDonald, the court notes that pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, No. 05-1808, ___ F.3d ___ (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the

scope of the issues raised, or of the comprehensiveness of the remedy
sought, the state claims may be dismissed without prejudice and left
for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).  Therefore, this

claim will be dismissed.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his

burden of proof in response to Defendants' motions for summary judgment.   Accordingly,

Defendants' Motions for Summary Judgment (docket #25 and #43) are granted and this case is

dismissed in its entirety.

A Judgment consistent with this Opinion will be entered.


Dated: <u>March 19, 2012</u>                              <u>/s/ Robert Holmes Bell</u>
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE